IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIYEAN BROWN and ERIN BEAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RIDLEY TOWNSHIP, | : | |
| MATTHEW ROWAN, | : | |
| BOROUGH OF GLENOLDEN, | : | |
| JOSEPH JUISTI, | : | |
| COLLINGDALE BOROUGH, | : | |
| BILL CHRISTIE, | : | |
| DARBY TOWNSHIP, | : | |
| MICHAEL LAVERGHETTA, and | : | |
| LOUIS DEVITO | : | NO. 14-5874 |

MEMORANDUM

Dalzell, J.                                                    February 10, 2015

## I.      Introduction

We consider here four motions to dismiss filed by the defendants in this case. Plaintiffs Kiyean Brown and Erin Bean, Brown's wife, bring various causes of action under 42 U.S.C. § 1983 and Pennsylvania law stemming from Brown's arrest in the early morning hours of November 10, 2012. Defendants are police officers and their municipal employers. The defendant officers are Matthew Rowan of Ridley Township, Joseph Juisti of Borough of Glenolden, Louis DeVito and Bill Christie of Collingdale Borough, and Michael Laverghetta of Darby Township.

We have federal question jurisdiction over Brown's Section 1983 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over both plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

For the reasons set forth below, we will grant the motions to dismiss filed by municipal defendants Collingdale Borough and Darby Township and Officers DeVito, Christie,

and Laverghetta. We will grant-in-part and deny-in-part the motions to dismiss filed by Borough of Glenolden, Officer Juisti, Ridley Township, and Officer Rowan.

## II.     Standard of Review

A defendant moving to dismiss under Fed R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider "the allegations contained

in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the complaint.

### III.    Factual Background

At about 2:00 a.m. on November 10, 2012, plaintiff Kiyean Brown was walking home on the 100 block of N. Llanwellyn Avenue in Glenolden, Pennsylvania when Officer Juisti arrested him outside his home for public drunkenness. Compl. at ¶ 16. Officers Rowan, DeVito, Christie, and Laverghetta assisted Officer Juisti. Id. Some number of the defendant officers handcuffed Brown, and Officer Juisti placed him in the back of a patrol car. Id. at ¶ 17. Brown sat on the back seat of the patrol car with his legs hanging out the door and his feet on the street. Id. at ¶ 18.

Brown, a self-described "large man," stands six feet, three inches tall, weighs two hundred sixty pounds, and wears size thirteen shoes. Id. Brown had difficulty getting his entire body into the back of the patrol car, as his hands were handcuffed behind his back. Id. As Officer Juisti attempted to push Brown's legs into the patrol car and while Brown tried to slide himself back into the car, one of Brown's legs struck Officer Juisti's right knee. Id. at ¶ 19. Officer Juisti was not injured. Id. at ¶ 20. Brown avers "that the kick was an inadvertent consequence of simply trying to shift further into the rear seat of the patrol car." Id. at ¶ 27. Officer Juisti then walked around to the other side of the patrol car to pull Brown farther in by his shoulders. Id. at ¶ 21.

Without any warning, Officer Rowan "savagely tasered [Brown] specifically in the testicles and about his thighs and groin." Id. at ¶ 22. Officer Rowan "dry stunned" Brown,

meaning he placed the Taser[1] directly onto Brown's person instead of shooting the Taser from a distance. Id. at ¶ 24. Brown alleges that Officer Rowan "specifically reached into the rear of the police car" to Taser him. Id. at ¶ 25. Officer Rowan did not warn Brown, who was attempting to comply with Officer Juisti's order to get into the patrol car. Id. at ¶ 26. Brown alleges that the other defendant officers -- DeVito, Christie, and Laverghetta -- were "in the immediate vicinity" and "did nothing and said nothing" to stop Officer Rowan. Id. at ¶ 28.[2]

The defendant officers did not provide Brown with any medical care after Officer Rowan Tasered him. Id. at ¶ 32. As a result of the Tasering, Brown suffered severe burns to his testicles, inner thigh, and groin. Id. at ¶ 36. He alleges persistent injuries, both physical and psychological. Id. As a result of his injuries, his wife, Erin Bean, alleges that she has been deprived of her husband's companionship, services, society, and consortium. Id. at ¶ 90.

Brown alleges that the defendant officers were trained not to Taser citizens in the testicles, groin, or thighs, and that they knew they had a duty to intervene or prevent a fellow officer from doing so. Id. at ¶¶ 29-30. He alleges further that the defendant officers were improperly trained and supervised by their employers -- the municipal defendants -- regarding when or how to use a Taser and how to interfere with another officer's improper use thereof. Id. at ¶ 41. Brown cites to the Ridley Township Police Department Policy & Procedure Manual and

---

[1] As we explained in Boyden v. Township of Upper Darby, 5 F. Supp. 2d 731, 737 n. 2 (E.D. Pa. 2014), current grammatical conventions favor capitalizing "Taser" -- both when used as a noun and a verb. We will adhere to that preferred convention here, though we will not correct the use of the lower case "taser" in the parties' papers.

[2] Brown attaches multiple exhibits to his complaint, some of which contradict this account of his arrest. See, e.g., Complaint Ex. B at 1 (Officer Juisti's police report and affidavit of probable cause recounting Brown's combative behavior, non-compliance with officers' verbal commands, refusal to get into the patrol car, use of racist remarks, repeated kicks of Officer Juisti's knee, and Officer Rowan's use of the Taser). Nonetheless, we must credit Brown's account of his arrest as rendered in his complaint and grant him all reasonable inferences.

the other municipal defendants' similar manuals as evidence of such policies, practices, and customs, but does not provide copies or excerpts from them. Id. at ¶¶ 41-45. Brown also complains that the defendant officers were improperly trained or supervised as to when it is appropriate to use force, how to use force, and how to appropriately place someone in custody. Id. at ¶¶ 43-45.  In support of his claim that the municipal defendants failed to train or supervise their officers regarding the use of Tasers, Brown refers to two recent cases, four news reports, and one publication. Id. at ¶ 51.

## IV.    Discussion

The Supreme Court explains that a cause of action under Section 1983 requires only two allegations: some person has deprived the plaintiff of a federal right, and that person acted under color of state or territorial law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005).

The complaint contains seven counts.[3] In Count I, Brown alleges the defendant officers violated his rights under Section 1983. In Count II, Brown brings a Monell claim against the municipal defendants and a negligence claim against the Borough of Glenolden. In Count III, Brown alleges the defendant officers violated his Fourth Amendment rights by using excessive force or failing to prevent or interfere with Officer Rowan's use of excessive force, and also asserts a Section 1983 conspiracy claim. Brown stipulated to the dismissal of Count IV, which alleged a violation of 42 U.S.C. § 1985(2)-(3). In Count V, Brown brings a supplemental state

---

[3] In response to defendants' motions to dismiss, plaintiffs stipulated to the dismissal with prejudice of all official capacity claims against all defendant officers; all First, Fifth, Eighth, and Fourteenth Amendment claims, including any Equal Protection or Due Process claims; all claims under 42 U.S.C. § 1985(2)-(3); and claims under the Pennsylvania Constitution. Resp. to Glenolden Mot. at unnumbered pgs. 2-3; Resp. to Collingdale Mot. at unnumbered pg. 3; Resp. to Darby Mot. at unnumbered pg. 3; Ridley Mot. at pgs. 1-2; Dec. 10, 2014 Stipulation. Since we will dismiss these claims with prejudice, we do not recount them while describing the complaint.

law claim for assault and battery against Officer Rowan.[4] In Count VI, Brown brings a supplemental state law claim for civil conspiracy against all defendant officers. In Count VII, plaintiff Erin Bean, Brown's wife, brings a supplemental state law claim against all defendants for loss of consortium.

There are four motions to dismiss in this case. Defendants Borough of Glenolden and Officer Juisti filed the first motion on October 31, 2014 (the "Glenolden Motion"). Defendants Borough of Collingdale and Officers DeVito and Christie filed the second motion on November 7, 2014 (the "Collingdale Motion"). The same day, defendants Darby Township and Officer Laverghetta filed their own motion to dismiss (the "Darby Motion"). Defendants Ridley Township and Officer Rowan filed the fourth motion on December 15, 2014 (the "Ridley Motion"). The Glenolden, Collingdale, and Darby Motions move to dismiss all counts against the eponymous municipal defendants and their officers, while the Ridley Motion moves to dismiss only the Monell claim against Ridley Township in Count II and the state law civil conspiracy claim against Rowan in Count VI.

Because of these motions and stipulations, as well as many of the defendants' similar legal arguments, we will proceed count-by-count as opposed to motion-by-motion.

### A.        Count I: Section 1983 Violation As To Officers

Brown styles Count I as a "Violation of 42 U.S.C. § 1983" against the defendant officers and makes several allegations therein. In Paragraph 51 Brown alleges that the defendant officers acted as part of a custom, policy, or practice which resulted from the municipal defendants' failure to train or supervise, Complaint at ¶ 51. Paragraph 52 alleges that the defendant officers

---

[4] Brown also stipulated to dismissal with prejudice of all state law assault and battery claims against Officers Juisti, DeVito, Christie, and Laverghetta. Resp. to Glenolden Mot. at unnumbered pgs. 2-3; Resp. to Collingdale Mot. at unnumbered p. 3; Resp. to Darby Mot. at unnumbered p. 3.

deprived Brown of his right "to bodily integrity and his right to be free from excessive force." <u>Id.</u> at ¶ 52.

The allegations in Paragraph 51 are duplicative of the allegations in Count II under plaintiff's <u>Monell</u> claim, and so we do not address them separately. The allegations in Paragraph 52 appear to allege a Fourth Amendment violation for excessive force, which plaintiff alleges again in Count III under "Excessive Force in Violation of 42 U.S.C. § 1983."

We will therefore dismiss Count I with prejudice, as it is duplicative of Counts II and III. To the extent that the paragraphs organized under Count I raise allegations pertaining to Counts II and III, we will consider them in the appropriate context. We discuss plaintiff's <u>Monell</u> claim in Part IV.B and his excessive force and failure to intervene claims, as well as his Section 1983 conspiracy claim, in Part IV.C.

### B. Count II: Section 1983 – <u>Monell</u> Claim Against Municipal Defendants And Negligence Claim Against Borough of Glenolden

In addition to his stated <u>Monell</u> claim against all municipal defendants, Brown appears to bring a negligence claim against the Borough of Glenolden. <u>See</u> Compl. at ¶ 59(e). We will discuss and ultimately dismiss both claims.

#### 1. *<u>Monell</u> Claim*

A municipality is not liable for its employees' constitutional torts under a theory of <u>respondeat superior</u> -- that is, a municipality cannot be held liable for its employees' torts solely by virtue of an employment relationship. <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 691 (1978). A municipality is liable for its employees' violations of Section 1983 only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Id.</u> at 694.

A plaintiff can demonstrate the existence of a governmental policy by showing "that a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issued an official statement of policy." <u>Jiminez v. All American Rathskeller, Inc.</u>, 503 F.3d 247, 250 (3d Cir. 2007) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986)) (internal alterations omitted). To show a custom, a plaintiff must establish that state officials engaged in a course of conduct so permanent and well-settled that it operated as law. <u>Id.</u> (citing <u>Monell</u>, 436 U.S. at 690).

In either case, a plaintiff bears the burden of showing a government policymaker's responsibility or acquiescence to the official's actions. <u>Id.</u> (citing <u>Andrews v. City of Phila.</u>, 895 F.2d 1496, 1480 (3d Cir. 1990)). A plaintiff may not need to specifically identify the responsible decisionmaker, since practices that are considered customs under <u>Monell</u> are ascribable to the municipal decisionmakers. <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990). Thus, even if a custom "has not been formally approved by an appropriate decisionmaker" it "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Board of Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997). Determining who is an official with final authority to establish municipal policy is a question of state law. <u>See</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988).

To be liable under Section 1983, "the government must act with deliberate indifference to the purported constitutional deprivation." <u>Jiminez</u>, 503 F.3d at 250. As a result, a failure to train may constitute a policy or custom giving rise to Section 1983 liability for a municipality only if that failure demonstrates deliberate indifference to residents' constitutional rights. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989). A failure to train evinces deliberate indifference if

> in light of the duties assigned to specific officers or employees the
> need for more or different training is so obvious, and the

> inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390.

There must also be "a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." Jiminez, 503 F.3d at 249-50 (quoting City of Canton, 489 U.S. at 385). It is not enough to claim that an injury could have been avoided by more or better training -- the deficiency identified by a plaintiff must be closely related to the ultimate injury. Grazier ex rel. White v. City of Phila., 328 F.3d 120, 125 (3d Cir. 2003) (citing City of Canton, 489 U.S. at 390-91). As our Court of Appeals has explained, such causation is often a question for the jury:

> [T]o sustain a § 1983 action against the City, plaintiffs must simply establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury. If the City is shown to have tolerated known misconduct by police officers, the issue whether the City's inaction contributed to the individual officers' decision to arrest the plaintiffs unlawfully in [a given] instance is a question of fact for the jury.

Bielevicz, 915 F.2d at 851.

Brown must therefore show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation to support municipal liability. As explained in Part IV.A above and Parts IV.C-F below, we will dismiss with prejudice all claims against Officers DeVito, Christie, and Laverghetta and, since Brown has no extant claims against those defendant officers, the municipal defendants employing them cannot be held liable for any alleged constitutional deprivation he suffered. See Grazier, 328 F.3d at 124 (explaining that the city could not be held liable on a failure to train theory for conduct a jury determined did not violate

the plaintiff's constitutional rights); see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (2002) (explaining that the municipality could not be held liable when the officer inflicted no constitutionally-protected injury). We will therefore dismiss with prejudice Brown's Monell claim in Count II as to municipal defendants Collingdale Borough and Darby Township.[5]

Given Brown's remaining claims against Officers Rowan and Juisti, however, we must determine whether Brown has pled sufficient facts to support a Monell claim against Ridley Township (Officer Rowan's employer), or Borough of Glenolden (Officer Juisti's employer).

Brown alleges that Officers Rowan and Juisti were improperly trained or supervised as to when and how to use a Taser. Compl. at ¶¶ 41-42. Plaintiff also alleges that Officer Rowan was improperly trained or supervised on when and how to appropriately use force and how to place someone like Brown in the rear seat of a patrol car. Id. at ¶¶ 43-45.

Plaintiff lists several "pre-existing events" as purported evidence that Ridley Township and the Borough of Glenolden had prior knowledge of specific incidents that indicated their failures to train and supervise, including: two lawsuits, fours news reports of Tasering, and the Ridley Eddystone Multi-Municipal Comprehensive Plan. Complaint at ¶ 51 & n. 2-5. We consider whether Brown, through these exhibits, has alleged sufficient factual matter to support a Monell claim against either municipality.

### a.     The Lawsuits

Brown refers to two lawsuits, "Liberman v. Marino, E.D. Pa. No. 06-cv-2745" and "Jewell v. Ridley Township, No. 09-cv-4947" to support his claims.  Compl. at ¶ 51. Brown

---

[5] Brown alleges that, because the municipal defendants assist each other, they are liable for the conduct of the police officers from the other municipalities. Compl. at ¶ 15. Brown provides no legal support for his "shared mutual jurisdiction" theory of Monell liability. Resp. to Glenolden Mot. at unnumbered pg. 9. We are unaware of any case law supporting this theory. Further, because we find that none of the municipalities is liable under Monell, there is no constitutional violation by any one municipality to impute to any other.

explains the relevance of the two prior lawsuits by "claiming that the Municipal Defendants, and/or defendant Ridley Township in particular, have failed to train and/or supervise their police officers to comport with their own police manuals." Id. Plaintiff does not explain these cases further, nor does he attach any supporting documentation regarding their content. However, we may consider matters of public record when ruling on a Rule 12(b)(6) motion. Pension Benefits Guar. Corp., 998 F.2d at 1196.

In Lieberman v. Marino, 2008 WL 4216150 (E.D. Pa. Sep. 15, 2008) (Baylson, J.) (listed as Case No. 06-cv-2745), Judge Baylson granted defendant Bushkill Township's motion for summary judgment on a Monell claim that alleged a custom of disregarding its stated policies on Tasers and a failure to adequately train and supervise its officers. Id. at *3. Ridley Township, the Borough of Glenolden, Officer Rowan, and Officer Juisti were not parties to that case, and, as stated above, Judge Baylson dismissed the claims against that municipality.  Id. at *7. At most, this case provides a public record that a plaintiff's previous allegation against another municipality's failure to train and supervise its officers' Taser use did not survive summary judgment. The decision in Lieberman does not support plaintiff's Monell claim against either municipality as it does not demonstrate that either one was aware of any similar Taser-related conduct by their police officers and then failed to take appropriate precautions. Bielevicz, 915 F.2d at 851.

In Jewell v. Ridley Twp., 2011 WL 5524260 (E.D. Pa. Nov. 10, 2011) (Surrick, J.) (listed as Case No. 09-cv-4947), aff'd, 497 F. App'x 182 (3d Cir. 2012), Judge Surrick granted defendant Ridley Township's motion for summary judgment. Id. at *1. Officer Rowan, Borough of Glenolden, and Officer Juisti were also not defendants in that case. In Jewell, the underlying incident was a police car chase that culminated in a crash. Id. at *2. Judge Surrick only

considered Ridley Township's Pursuit Policy, <u>not</u> any Taser-related policies. <u>Id.</u> at *7-9. At most, then, the decision in <u>Jewell</u> shows that Ridley Township was aware of complaints about its pursuit policy, not any Taser-related policies or customs. The decision in <u>Jewell</u> does not support Brown's <u>Monell</u> claim against Ridley Township as it, too, fails to show that Ridley Township was aware of any similar past Taser-related conduct by Ridley Township police officers and then failed to take proper precautions. <u>Bielevicz</u>, 915 F.2d at 851.

### b.       <u>The Newspaper Articles</u>

Brown provides links to, and brief explanations of, four articles detailing various Pennsylvania police officers' use of Tasers in specific incidents. Compl. at ¶ 51 & n. 2-5. Though Brown did not attach the full text of those articles, defendants Ridley Township and Officer Rowan did. <u>See</u> Ridley Mot. Exs. A-D. We may consider these articles because those defendants included them in their motion to dismiss, Brown relied on them in his complaint, and their authenticity is not disputed. <u>Pension Benefits Guar. Corp.</u>, 998 F.2d at 1196.

The first article[6] reported the arrest of a Darby Township landscaper in Ridley Township. Rose Quinn, <u>Briarcliffe resident charged with theft, assaulting officer</u>, The Delaware County Daily Times (Sep. 15, 2011, 12:01 AM), <u>http://www.delcotimes.com/general-news/20110915/briarcliffe-resident-charged-with-theft-assaulting-officer</u> (the "Quinn article"). According to the Quinn article, police officers approached the landscaper after observing him trying door handles on parked cars in an area where there had been a number of break-ins. <u>Id.</u> The landscaper fled, and after a brief foot chase, the officers tackled him. <u>Id.</u> The landscaper began punching the officers, and one of them stunned him with a Taser. <u>Id.</u>

---

[6] Compl. at ¶ 51 & n. 2; Ridley Mot. Ex. A.

The second article[7] reported the then-upcoming trial of a Colwyn police officer for using his Taser on a shackled teenager. David Madden, <u>Trial Ordered For Colwyn, Pa. Cop in Controversial Tasering Incident</u>, CBS Philly (May 22, 2012, 12:35 PM), <u>http://philadelphia.cbslocal.com/2012/05/22/trial-ordered-for-colwyn-pa-cop-in-controversial-tasering-incident/</u> (the "Madden article"). According to the Madden article, the Colwyn officer allegedly Tasered the teenager while the teen was shackled and locked in a cell. <u>Id.</u>

The third article[8] reported a high-speed chase in Brookhaven that ended after police officers subdued the driver with a Taser. Timothy Logue, <u>Springfield man leads police on high-speed chase</u>, The Delaware County Daily Times (June 19, 2012, 12:01 AM), <u>http://www.delcotimes.com/general-news/20120619/springfield-man-leads-police-on-high-speed-chase</u> (the "Logue article"). According to the Logue article, police halted a high-speed chase by ramming the speeding driver's truck. <u>Id.</u> After the driver tried to flee on foot, a Brookhaven police officer shot him with a Taser. <u>Id.</u>

The fourth article[9] reported the arrest of a suspected drug dealer in Ridley Township. Cindy Scharr, <u>Ridley cops: Darby man faces drug dealing, assault charges</u>, The Delaware County Daily Times (November 27, 2012, 12:01 AM), <u>http://www.delcotimes.com/general-news/20121127/ridley-cops-darby-man-faces-drug-dealing-assault-charges</u> (the "Scharr article"). According to the Scharr article, defendant Officer Rowan observed a suspected hand-to-hand drug deal, leading him to approach the suspect's car. <u>Id.</u> Officer Rowan, observing what he thought to be heroin, ordered the suspect out of the car, but the suspect refused and tried to drive away. <u>Id.</u> Officer Rowan grabbed the suspect and pulled him out of the car. <u>Id.</u> Another officer

---

[7] Compl. at ¶ 51 & n. 3; Ridley Mot. Ex. B.

[8] Compl. at ¶ 51 & n. 4; Ridley Mot. Ex. C.

[9] Compl. at ¶ 51 & n. 5; Ridley Mot. Ex. D.

drove up to assist. Id. The suspect continued resisting, and, after he broke free, one of the assisting officers, Officer Scanlan, shot him with a Taser. Id. Officer Rowan and two other officers eventually subdued the suspect. Id.

Brown's Monell claim finds no support in these articles or any reasonable inferences drawn therefrom. The events reported in the Madden and Logue articles involved police use of Tasers, but not by police officers in Ridley Township or the Borough of Glenolden, and not by Officer Rowan or Juisti.

The events reported in the Quinn article took place in Ridley Township, but even if we grant Brown the inference that the officer using the Taser was employed by the Ridley Township Police Department, there is nothing in the article to suggest impropriety. Officers may lawfully use their Tasers under appropriate circumstances. Nothing in the article suggests that this use of a Taser was unlawful, or shows Ridley Township was aware of similar past Taser-related misconduct by its officers and then failed to take appropriate precautions.

The incident reported in the Scharr article involved Officer Rowan and took place in Ridley Township, but shows at most that Ridley Township was aware that Officer Rowan had been involved in a contentious street arrest where another officer -- not Officer Rowan -- used a Taser to subdue a fleeing suspect.[10] Nothing in the article suggests that Ridley Township was

---

[10] Contrary to the news report, which indicates that Officer Scanlan deployed his Taser, Officer Rowan appears to state in his motion to dismiss that he did use a Taser. Ridley Mot. at pg. 7 ("Two of the articles identify the use of a taser on suspects and, in one case one [sic], Officer Rowan utilized a taser…The use of the taser by Officer Rowan in that case would be entirely justified under those circumstances and, as the article indicates, the taser was not used at any point prior to the struggle."). Brown does not appear to allege that the news article reported Officer Rowan using a Taser. Compl. at ¶ 51 (summarizing the article as describing "the specific participation" of Officer Rowan, but not alleging that he used a Taser in that incident).

Even granting Brown the reasonable inference from Officer Rowan's motion that Officer Rowan did use a Taser in the incident reported in the Scharr article, that article does not raise a reasonable inference that Officer Rowan used his Taser improperly, or that Ridley Township was

aware that Officer Rowan, or other police officers, used their Tasers improperly and then failed to take appropriate precautions. There are no reasonable inferences from this incident that support Brown's <u>Monell</u> claim.

These articles provide no factual basis, or cause for a reasonable inference, that either Ridley Township or the Borough of Glenolden was aware of past similar Taser-related misconduct by Officer Rowan, Officer Juisti, or other police officers and then failed to take appropriate precautions.[11] <u>Bielevicz</u>, 915 F.2d at 851.

### c.    The Ridley Eddystone Multi-Municipal Comprehensive Plan

Brown also refers to the Ridley Eddystone Multi-Municipal Comprehensive Plan. Compl. at ¶ 51. Brown attaches an excerpt of this plan, drawing the Court's attention to one paragraph on page 8, which reads:

> All Ridley's officers are expected to complete the required State Act 120 training and certification as well as annual in-service training as required by Act 180. The Township also requires its officers to complete a "run and shoot" program and taser training that is administered by range instructions and in-house staff. The police department also utilizes the Ridley High School Community Center for training and other police-related activities. In addition to regular police duties, four officers participate in the Drug Abuse Resistance Education program (DARE) at local schools.

Compl. Ex. D at p. 8.

---

aware of prior Taser-related misconduct by Officer Rowan and then failed to take proper precautions.

[11] These factual assertions are unlike those in <u>Boyden</u> where plaintiff supported his <u>Monell</u> claim with factual averments that: two officers in the township were fired for excessive force and then reinstated, there had been two cases where plaintiffs sued the township's officers for using excessive force during arrests, and the defendant officer himself participated in a recent beating during which he used a Taser. <u>Boyden</u>, 5 F. Supp. 2d. at 743. Those factual allegations drew a direct link between the township's inaction and prior misconduct by officers, including the defendant officer himself. Brown's factual allegations are far more tenuous and do not support a <u>Monell</u> claim against Ridley Township.

Merely pointing to Ridley Township's plans for training does not support Brown's Monell claim. The fact that Ridley Township has expectations for its officers' training does not raise any inference of wrongdoing by Ridley Township. Brown pleads "upon information and belief" that Ridley Township "failed to require" Officer Rowan to complete this training, or failed to supervise him properly in Taser-related training. Compl. at ¶ 51. This is not enough to state a Monell claim. There is no reasonable inference from the use of the word "expected" in the plan that Ridley Township did not properly train or supervise Officer Rowan regarding the use of Tasers, nor that Ridley Township was deliberately indifferent. Further, as Ridley Township points out, it did not promulgate this document, and in fact all police officers are required to be certified under Act 120 and must recertify annually. Ridley Mot. at p. 5. Nothing in the document raises a reasonable inference that Ridley Township does not adhere to these requirements, or that Officer Rowan is not properly trained or certified under Act 120.

Brown's proffered facts do not in themselves -- or even with the benefit of reasonable inferences -- support a Monell claim against Ridley Township or Borough of Glenolden. We will therefore dismiss with prejudice Brown's Monell claim in Count II as to both municipalities.

## 2.   **Negligence Claim**

Brown also appears to assert a negligence claim against the Borough of Glenolden. Compl. at ¶ 59(e). In its motion to dismiss, the Borough of Glenolden argues that it has immunity. Glenolden Mot. at ¶ 76 (citing to 42 Pa. Cons. Stat. Ann. § 8541 et seq.). Section 8541 provides that, barring a statutory exception, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541. One such exception is that the injury "was caused by the negligent acts of the local agency or an employee thereof

16

acting within the scope of his office or duties with respect to one of the categories listed in subsection (b)." 42 Pa. Cons. Stat. Ann. § 8542(a)(2).

Brown argues that subsection (b)(1) for vehicle liability applies because he was "electrocuted during the use of a motor vehicle…the use of the motor vehicle to confine [him] is precisely what afforded the opportunity to electrocute him in the first place." Resp. to Glenolden Mot. at unnumbered p. 11; Compl. at ¶ 23 (alleging that the police cruiser was a motor vehicle used in the commission of Officer Rowan's Tasering of Brown). Subsection (b)(1) on vehicle liability provides:

> The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer. . . . As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa. Cons. Stat. Ann. § 8542(b)(1).

Exceptions to the rule of governmental immunity must be interpreted narrowly. <u>Snyder v. Harmon</u>, 562 A.2d 307, 312 (Pa. 1989). The Supreme Court of Pennsylvania has interpreted "operation" to exclude "acts taken at the cessation of operating a vehicle." <u>Love v. City of Phila.</u>, 543 A.2d 531, 533 (Pa. 1988). Subsequent case law explains that this means "a parked vehicle is not in operation, and . . . claims involving a parked vehicle are not actionable under the vehicle exception to governmental immunity." <u>City of Phila. v. Melendez</u>, 627 A.2d 234, 235 (Pa. Commw. Ct. 1993). Thus, without movement, the motor vehicle exception does not apply. <u>Swartz v. Hilltown Twp. Volunteer Fire Co.</u>, 721 A.2d 819, 821 (Pa. Commw. Ct. 1998).

Though Brown pleads that he was Tasered in the patrol car, he does not allege that the patrol car was in motion. The use of the patrol car to confine him does not constitute "operation"

within the meaning of Section 8542(b)(1). The patrol car, by Brown's own account, was parked. The motor vehicle exception to governmental immunity does not apply. We will therefore dismiss Brown's negligence claim in Count II.

### C.   Count III: Section 1983 – Excessive Force And Conspiracy Claim

#### 1.   Excessive Force And Failure To Intervene

Brown alleges that Officer Rowan used excessive force by Tasering him in the groin while he was attempting to comply with Officer Juisti's orders to get into the patrol car. Brown further alleges that the remaining defendant officers violated his Fourth Amendment rights by failing to intervene or prevent Officer Rowan's use of excessive force.

Officer Juisti argues that Brown admitted in his complaint that Officer Juisti was on the opposite side of the patrol car when Officer Rowan Tasered him, and that Officer Rowan did so without warning. Glenolden Mot. at ¶¶ 50-51. Officer Juisti argues that, "pursuant to documents that Plaintiffs themselves incorporated into their Complaint, Glenolden Officer Juisti did not see Plaintiff get tased." Id. at ¶ 52 (referring to plaintiff's inclusion of Officer Juisti's preliminary hearing testimony). Officer Juisti argues, citing to Matthews v. Villella, 381 F. App'x 137, 140 (3d Cir. 2010) and Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002), that he "cannot be held liable for failing to stop something he never saw." Glenolden Mot. at ¶ 55. Based on Officer Juisti's main narrative, Brown argues that Officer Juisti did see Officer Rowan Taser him, that Officer Juisti was in the immediate vicinity when Office Rowan used the Taser, and that Officer Juisti's assertions to the contrary raise an issue of credibility and fact. Resp. to Glenolden Mot. at unnumbered pgs. 7-8.

Officers DeVito and Christie argue that Brown does not allege that they knew he was injured, "and it does not appear from the allegations…that they were involved after the plaintiff

was placed in the squad car as it is alleged only that they were in the 'immediate vicinity.'" Collingdale Mot. at ¶ 8. Officers DeVito and Christie further argue that Brown has not pled that they had an opportunity to intervene or even knew that Officer Rowan would use a Taser. Id. at ¶ 10. Officer Laverghetta makes a similar argument -- that pleading merely that he was in the immediate vicinity is insufficient and that there is no allegation that Officer Laverghetta had time to intervene or even knew Officer Rowan would use a Taser. Darby Mot. at ¶ 10.

Brown responds that Officers DeVito and Christie were in the immediate vicinity and whether or not the officers observed Officer Rowan Taser him is "ultimately a matter for a credibility determination." Resp. to Collingdale Mot. at unnumbered pgs. 8-9. Brown provides the same response to Officer Laverghetta's arguments. Resp. to Darby Mot. at unnumbered pg. 8.

Essentially, Officers DeVito, Christie, Laverghetta argue that they cannot be held liable for failing to intervene because Brown has not pled that they observed Officer Rowan use the Taser or that they knew Officer Rowan would use the Taser, and the sudden nature of the Tasering precluded any of them from intervening on Brown's behalf.  Officer Juisti argues that even though Brown pleads that Officer Juisti must have seen Officer Rowan Taser him, Brown also attaches documents that contradict that factual assertion.  Brown argues that by pleading that they were in the immediate vicinity and knew of their duty to intervene, he has pled enough to survive a motion to dismiss, and the question of whether the defendant officers observed Officer Rowan's use of the Taser is an issue of credibility.

A police officer has a duty to take reasonable steps to protect a victim from another officer's excessive force; failure or refusal to intervene when an unprovoked beating takes place in his presence creates the possibility of liability under Section 1983. Smith v. Mensinger, 293

F.3d 641, 650 (3d Cir. 2002). An officer is only liable, however, if there was a realistic and reasonable opportunity to intervene. Id. at 651. If an officer is present when his officer-colleague violates a citizen's constitutional rights, the officer is liable under Section 1983 only if he had reason to believe that his colleague was committing a constitutional violation and he had a reasonable and realistic opportunity to intervene. Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 701 (E.D. Pa. 2011); Bryant v. City of Phila., 2012 WL 258399, *8 (E.D. Pa. Jan. 27, 2012) (Robreno, J.). Other courts have held that such an opportunity exists only when that colleague uses excessive force in the officer's presence or otherwise within his knowledge, or if the officer saw his colleague use excessive force and had time to intervene. Bryant, 2012 WL 258399, *8 (citing Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972) and Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981)).

When considering whether a plaintiff has provided sufficient factual averments to state a claim for failure to intervene, courts must consider the officers' physical location relative to the alleged constitutional violation, the temporal sequence of events before and during the alleged violation, and whether the officers were otherwise engaged during the alleged violation.

If an officer is too far away from the alleged constitutional violation, he does not have a reasonable or realistic opportunity to intervene. In Sullivan, the Court explained it was unaware of any case law "to support the proposition that officers who had no reasonable opportunity to intervene to prevent a constitutional deprivation can nonetheless be liable for failure to intervene if they were merely present on the scene before the violation occurred." 765 F. Supp. 2d at 701. In Sullivan, plaintiff was shot and killed by police officers after he climbed out of a window in the rear of his mother's house while attempting to escape arrest. Id. at 692. As part of a larger police response, three officers took up posts at the front of the house, and they were not among

the officers who shot plaintiff. Id. at 701. The Court explained that any excessive force used against the plaintiff occurred after he exited the rear of the house through the window, and the three officers' positions in front of the house "deprived them of any reasonable or realistic opportunity to intervene in the alleged violation of [plaintiff's] constitutional rights." Id. at 701-02.

Similarly, in Knox v. Doe, 487 F. App'x 725 (3d Cir. 2012), our Court of Appeals found that plaintiff's complaint failed to meet the plausibility standard Iqbal required when the facts alleged indicated that the prison guards were not present during the attack, and even if they had been, no facts could be read to allege that they would have had a reasonable and realistic opportunity to intervene. Knox, 487 F. App'x at 728. Our Court of Appeals, in so observing, explained that the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678).

If an alleged constitutional violation occurs quickly, or without forewarning, and does not persist, an officer who is merely present is not liable for failure to intervene. In Matthews v. Villella, 381 F. App'x 137 (3d Cir. 2010), our Court of Appeals ruled that a corrections officer did not have an opportunity to intervene in his colleague's use of excessive force when plaintiff's allegation was that the officer saw his colleague strike plaintiff's handcuffed hands with a billy club and, "upon witnessing the assault, asked [his colleague], 'what are you doing?'" Id. at 138. Similarly, in Stewart v. Moll, 717 F. Supp. 2d 454 (E.D. Pa. 2010), the Court held that an officer did not have time to intervene "[g]iven the quick sequence of events." Id. at 463. In Stewart, an officer physically engaged with a fugitive to prevent him from leaving the room in which the officer and his colleague found him. Id. at 458. After the fugitive wrestled away from the officer, the officer's colleague shot him twice in the chest. Id. The Court ruled that the officer had no

opportunity to intervene since he was grappling with the fugitive immediately before his colleague shot him. <u>Id.</u> at 462-63. After the shooting, the officer handcuffed the soon-to-be-deceased fugitive, while his colleague handcuffed the fugitive's sister, a witness. <u>Id.</u> at 458. The Court also ruled that the officer did not have an opportunity to intervene in any alleged excessive force his colleague used to handcuff the fugitive's sister, as the officer was busy handcuffing the fugitive at that moment. <u>Id.</u> at 463.

Brown alleges that Officers Rowan, DeVito, Christie, and Laverghetta assisted Officer Juisti in arresting him for public drunkenness and that one or more of them handcuffed him. Compl. at ¶¶ 16-17. Brown then alleges that Officer Juisti placed him in the back of the patrol car, and that Officer Rowan Tasered him after Officer Juisti went around to the other side of the car to pull him through by his shoulders. <u>Id.</u> at ¶¶ 17, 21-22. There are no allegations about Officers DeVito, Christie, or Laverghetta's whereabouts or actions after they assisted Officer Juisti in handcuffing Brown.

Brown's allegations regarding Officers DeVito, Christie, and Laverghetta do not sustain a claim for failure to intervene. Those defendant officers were present for, and may have assisted with, Brown's initial handcuffing. But Brown offers no specifics of the unlawfulness of that portion of his arrest. He makes no allegations regarding those defendant officers' whereabouts or actions while Officers Juisti and Rowan attempted to get him into the patrol car, except that they were in the immediate vicinity. This is not enough. Even if they had witnessed Officer Rowan use the Taser, they would not have had a realistic or reasonable opportunity to intervene. By Brown's account, he was in the back seat of a patrol car, with Officer Juisti at his shoulders and Officer Rowan at his legs. Officer Rowan applied the Taser directly to Brown's groin and had to reach into the patrol car to do so. <u>Id.</u> at ¶ 25. This close encounter, and the suddenness of the act,

precluded Officers DeVito, Christie, and Laverghetta from any realistic or reasonable opportunity to intervene. Brown must do more than raise the mere possibility of wrongdoing -- he must plead sufficient facts to cross the plausibility threshold. We will therefore dismiss the excessive force claim in Count III as to those three defendants.

But we will not dismiss the excessive force claim in Count III as to Officer Juisti. Brown states that Officer Juisti had walked around the patrol car to pull him across the seat by his shoulders when Officer Rowan Tasered him. Brown alleges, based on the detail of Officer Juisti's police report, that Juisti must have seen Officer Rowan Taser him. At this stage, we must grant reasonable inferences to the non-moving party, and it is reasonable to infer based on the report and Officer Juisti's presence at the patrol car that he could have seen Officer Rowan deploy his Taser.[12]  On the record before us, it is not clear whether Officer Juisti had a reasonable or realistic opportunity to intervene. As demonstrated by Matthews and Stewart, an officer may be in very close proximity to a colleague's use of excessive force and still not have a reasonable opportunity to intervene based on how suddenly or unexpectedly his fellow officer acts.  But those decisions finding that the officers did not have a realistic opportunity to intervene were decided on a more thoroughly developed record at the summary judgment stage of the proceedings. At this early stage, taking Brown's factual allegations and granting him the reasonable inferences therefrom, Brown has alleged enough to survive a motion to dismiss. We will therefore deny Officer Juisti's motion to dismiss the failure to intervene claim in Count III.

---

[12] Brown infers from Officer Juisti's police report describing how Officer Rowan applied the Taser directly to his person that Officer Juisti must have seen the incident. Resp. to Glenolden Mot. at unnumbered pg. 5. While Officer Juisti disputes that he saw Officer Rowan use the Taser, Glenolden Mot. at ¶¶ 4-6, we must at this juncture credit Brown's account.

2.      <u>Section 1983 Conspiracy</u>

In addition to the excessive force claim, Brown brings a conspiracy claim, arguing that the defendant officers "acting in concert and conspiracy with each other, have…deprived Plaintiff of his constitutional and statutory rights." Compl. at ¶ 70.

A conspiracy under Section 1983 requires that two or more conspirators reach an agreement to deprive a plaintiff of a constitutional right under color of law. <u>Parkway Garage, Inc. v. City of Phila.</u>, 5 F.3d 685, 700 (3d Cir. 1983) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970)). Such a conspiracy requires a meeting of the minds. <u>Startzell v. City of Phila.</u>, 533 F.3d 183, 205 (3d Cir. 2008). The plaintiff must allege a factual basis to support agreement and concerted action -- the elements of conspiracy. <u>Capogrosso v. The Supreme Court of New Jersey</u>, 588 F.3d 180, 185 (3d Cir. 2009).

Brown fails to allege any factual basis to support an agreement or meeting of the minds by the defendant officers to use excessive force against him or deprive him of any other constitutional right.

We will dismiss with prejudice Count III in its entirety as to Officers DeVito, Christie, and Laverghetta. We will also dismiss the Section 1983 conspiracy allegation contained in Paragraph 70 as to Officers Rowan and Juisti, but not the Section 1983 excessive force claim against them.

D.      <u>Count IV: Section 1985 – Conspiracy To Deprive</u>

Brown alleges in Count IV that the defendant officers conspired to hinder or obstruct justice and deprive him of the equal protection of the law and his due process rights. Compl. at ¶¶ 74-76 (citing 42 U.S.C. §§ 1985(2)-(3)). Brown stipulated to the dismissal with prejudice of this claim as to all defendant officers. <u>See</u> Resp. to Glenolden Mot. at unnumbered pgs. 2-3;

Resp. to Collingdale Mot. at unnumbered pg. 3; Resp. to Darby Mot. at unnumbered pg. 3; Dec. 10, 2014 Stipulation.

We will therefore dismiss Count IV with prejudice.

### E.        Count V: State Law – Assault And Battery

Brown withdrew his state law assault and battery claims against Officers Juisti, DeVito, Christie, and Laverghetta. Officer Rowan did not move to dismiss this claim. We will therefore dismiss Count V with prejudice as to Officers Juisti, DeVito, Christie, and Laverghetta.

### F.        Count VI: State Law – Civil Conspiracy

Brown alleges that the defendants officers conspired to "assault" him and "inflict harm" upon him. Compl. at ¶¶ 39-40. All defendant officers have moved to dismiss Brown's state law claim for civil conspiracy founded upon those allegations. Glenolden Mot. at ¶ 82; Collingdale Mot. at p. 10; Darby Mot. at pgs. 15-16; Ridley Mot. at p. 10.

The gravamen of Brown's state law civil conspiracy claim is that Officer Rowan Tasered him while Officer Juisti was pulling him into the patrol car from the other side, and the other officers at the scene of his arrest did nothing. Resp. to Ridley Mot. at unnumbered p. 9.

The elements of a civil conspiracy claim are: (1) a combination of two or more persons acting with a common purpose to do an unlawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuit of that common purpose, and (3) actual legal damage. Commonwealth v. TAP Pharm. Prods., Inc., 36 A.3d 1112, 1144 (Pa. Commw. Ct. 2011), vac. on other grounds, 94 A.3d 364 (Pa. 2014). Plaintiff must also prove malice, or an intent to injure. Id. See also Montgomery Cnty., Pa. v. MERSCORP, Inc., 904 F. Supp. 2d 436, 453 (E.D. Pa. 2012) (rehearsing the elements).

Brown fails to allege a sufficient factual basis to permit the inference that any of the defendant officers conspired to use excessive force against him. Brown "believes and therefore avers that the Defendant Officers, by and through their actions and/or inactions…did intentionally conspire, while acting within the course and scope of their authority, to unlawfully batter and/or assault Plaintiff." Compl. at ¶ 84. This recitation is not enough to allege civil conspiracy. Brown provides no factual basis, or facts permitting the reasonable inference, that two or more of the defendant officers acted with a common purpose to commit an unlawful act for an unlawful purpose.

We will therefore dismiss Count VI with prejudice as to all defendant officers.

### G.      Count VII: State Law – Loss of Consortium Against All Defendants

All defendants, except for Officer Rowan and Ridley Township, have moved to dismiss plaintiff Erin Bean's supplemental state law claim for loss of consortium.

In Pennsylvania, an action for loss of consortium is "derivative, depending for its viability upon the substantive merit of the injured party's claims." Schroeder v. Ear, Nose & Throat Assocs. of Lehigh Valley, Inc., 557 A.2d 21, 22 (Pa. Super. Ct. 1989) (citing Boarts v. McCord, 511 A.2d 204, 209 (Pa. Super. Ct. 1986)).

As we have dismissed all of plaintiff Brown's claims against Officers DeVito, Christie, and Laverghetta and the municipal defendants, there are no viable claims against them upon which plaintiff Bean's derivative claim may hang upon. We will therefore dismiss Count VII with prejudice as to Officers DeVito, Christie, and Laverghetta, as well as Ridley Township, the Borough of Glenolden, Collingdale Borough, and Darby Township.

However, as plaintiff Brown still has extant claims against Officers Rowan and Juisti, we will not grant Officer Juisti's motion to dismiss Count VII.

26

**VIII.   Conclusion**

We will dismiss with prejudice Counts I, II, IV, and VI. As to all defendants except Officers Rowan and Juisti, we will dismiss with prejudice Counts III and VII. However, as to both Officers Rowan and Juisti, we will dismiss the Section 1983 conspiracy claim contained in Count III. As to all defendants except Officer Rowan, we will dismiss with prejudice Count V.

As we have dismissed all claims against them, Officers DeVito, Christie, and Laverghetta, as well as Ridley Township, the Borough of Glenolden, Collingdale Borough, and Darby Township are no longer defendants in this case.

An appropriate Order follows.

BY THE COURT:

  _/s/ Stewart Dalzell, J.

27