IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIYEAN BROWN and ERIN BEAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MATTHEW ROWAN, and | : | |
| JOSEPH JUISTI | : | NO. 14-5874 |

MEMORANDUM

Dalzell, J.                                                                 March 7, 2016

## I.  Introduction

We consider here the defendants' motions for summary judgment. Plaintiff Kiyean Brown brings a 42 U.S.C. § 1983 claim for excessive force and a state law claim for assault and battery against defendant Matthew Rowan. Brown also brings a Section 1983 excessive force claim under a failure to intervene theory against defendant Joseph Juisti. Erin Bean, Brown's wife, brings derivative loss of consortium claims against both defendants.

Because there are no genuine issues of material fact for trial and the undisputed material facts demonstrate that the defendants are entitled to summary judgment in their favor, we will grant their motions.

## II.  Standard of Review

Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the moving party meets this initial burden, then the non-moving party must show via submissions beyond the pleadings that there are genuine factual issues for trial. Id. at 324. The non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. Id. at 321 n.3.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence is insufficient). Material facts are those that would affect the outcome of the case under the governing law. Id. at 248. The Court may not make credibility determinations or weigh the evidence and must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, Pa., 271 F.3d 417, 420 (3d Cir. 2001). Our function is to determine whether there are genuine issues for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Anderson, 477 U.S. at 249).

The defendants filed separate motions for summary judgment, but plaintiffs' claims against the two police officers hinge on the same Fourth Amendment analysis of the facts and

circumstances surrounding Brown's arrest. Since the parties conducted discovery together and rely on a common set of documents, we include only one factual recitation.

**III.     Factual Background**

On the evening of November 10, 2010, plaintiff Kiyean Brown was drinking with two friends -- first at his house and then at the Red Lantern in Glenolden Borough, Delaware County, Pennsylvania. Brown Dep. 19:18 - 21:24. Over the course of the evening, Brown consumed several drinks. Id. After a fight broke out around 1:30 a.m. at the Red Lantern, police cleared the bar. Id. at 22:3-5. Brown and his two friends left the bar and began walking toward Brown's house a few blocks away. Id. at 22:5-8.

Defendant Joseph Juisti, a police officer in the Borough of Glenolden, saw the three men and exited his patrol car to ask where they were going. Preliminary Hearing Testimony ("PHT") at 21:1-3; Brown Dep. at 25:20 - 26:7. After Officer Juisti told Brown to go home, Brown began walking down the street: "I was talking to myself, I don't know what I was saying, I probably was cursing to myself or whatever." Brown Dep. at 26:9-13. According to Officer Juisti, Brown was yelling obscenities while walking in the street, smelled like alcohol, and seemed hostile and upset. PHT at 10:5-13, 15:18-23.

Officer Juisti eventually told Brown he was going to jail for disorderly conduct. Brown Dep. at 27:6-12. Brown continued to walk home while "debating" with Officer Juisti, since Brown believed he was following the officer's order to go home. Id. at 27:24 - 28:3. Officer Juisti twice tried to pull Brown's arms behind his back to arrest him, but Brown shook him off both times. Id. at 28:4-9; PHT at 11:5-10. Brown is six feet, three inches tall and weighed about two hundred fifty pounds at the time. Brown Dep. at 6:13-16.  After Officer Juisti unsuccessfully tried to handcuff Brown, four other police officers tackled Brown to the ground and handcuffed

3

him. Id. at 28:8-9. At some point, Brown's two friends returned with "choice words" for the officers arresting Brown. Rowan Dep. at 52:7-10. Defendant Matthew Rowan, a police officer in Ridley Township, ordered them to move back and go home. Id. at 52:12-16.

Brown was handcuffed and placed in the back of Officer Juisti's patrol car, where he sat on the edge of the back seat with his hands handcuffed behind him and his feet on the ground outside. Brown Dep. at 29:13:18, 29:13 - 30:1; PHT at 12:5-11. At some point, Brown kicked Officer Juisti in the shin or knee. According to Brown, he was trying to inch his way into the patrol car, the kick was accidental, and he immediately apologized. Brown Dep. 29:20 - 30:1. According to Officer Juisti, Brown kicked him several times in the right knee and was refusing to put his feet in the car. PHT at 12:5-11. Officer Rowan was within a few feet of the car when he saw Brown kick Officer Juisti. Rowan Dep. 57:1-2, 66:18-19.

Officer Juisti then walked around to the opposite side of the patrol car to try to pull Brown further into the back seat by his arms. Brown Dep. at 30:2-5; PHT at 12:19-21. Officers Rowan and Juisti understood that Officer Juisti would walk around to pull Brown in from behind while Officer Rowan remained by Brown's legs because Officer Juisti was having a difficult time getting Brown into the car by himself. Rowan Dep. 57:4-13, 67:11-18. Brown says he then heard an officer, who he now assumes to be Officer Juisti, tell Officer Rowan to Tase him and that Officer Rowan drive stunned[1] him twice, once in the thigh and once in the genitals. Brown

---

[1] When a Taser is fired, two wires with probes at the ends are propelled from the Taser. When the probes touch someone's skin or clothing, the electrical signal transmitted between the probes causes a loss of neuromuscular control, precluding coordinated movement. Some Tasers, such as the one Officer Rowan used, can also be deployed in a touch-stun or drive stun mode. When used in drive stun mode, the head of the Taser is pressed against someone's skin or clothing to apply an electrical shock. Drive stun mode does not cause a loss of neuromuscular control, but it is painful. See generally Wisneski v. Denning, 2014 WL 1758118, *3 (W.D. Pa. Apr. 30, 2014) (Conti, C.J.) (unreported) (explaining the difference between using a Taser in drive stun mode and using the Taser probes); Commonwealth v. Gray, 2014 WL 10787896, *1 n.1 (Pa. Super. Ct. Nov. 18, 2014) (Olson, J.) (non-precedential) (using officer testimony to

Dep. at 30:4-20. Brown says Officer Rowan was standing in front of him and between his legs at the time. Id. at 36:1-11. Officer Rowan had pinned one of Brown's legs against the door so Brown could not kick him, and the officer says he told Brown to get into the car or he would Tase him. Rowan Dep. at 67:1 - 68:8.

Officer Rowan filed a Taser usage report with the Ridley Township Police Department. Rowan Mot. Ex. F. According to the boxes checked off by Officer Rowan, he applied a single "drive stun" to Brown for two seconds, the incident involved an assault on an officer and resisting arrest, and the relevant threat level was "active aggression." Id. at 1. Officer Rowan indicated that he drive stunned Brown once in the upper thigh area near the groin. Id. at 2.[2]

After Officer Rowan drive stunned Brown, Officer Juisti pulled him into the car and both officers transported Brown to the police station. Brown Dep. at 36:12-24. Brown was charged with aggravated assault, resisting arrest, public drunkenness, and disorderly conduct. Juisti Mot.

---

explain that drive stun mode is for pain compliance while using the probes causes neuromuscular system effects).

[2] Officer Rowan's subjective state of mind is not relevant to our objective inquiry, but we include his explanation of his conduct because of the unusual insight into his decision-making process before using force. According to Officer Rowan, he drive stunned Brown, as opposed to deploying the probes, because the "desired effect that I wanted was pain compliance. I didn't need for his whole skeletal, muscle tissue to seize up and lock up. He did not need that. I was trying pain compliance. He was not complying with us to get into the car, to stop kicking." Rowan Dep. at 46:14-23. After Officer Rowan drive stunned Brown, Brown complied and got into the car. Id. at 47:1-11.

Officer Rowan explained that he drive stunned Brown where he did because of the three places on the body that he was trained to drive stun for pain compliance, the "pelvic triangle" was the best option. Id. at 70:20 - 71:21. Officer Rowan further explained that when drive stunning someone for pain compliance purposes the options are the sides of the upper arms, the carotid artery on the neck, and the groin or pelvic triangle. Id. Officer Rowan could not reach Brown's upper arms because Brown was handcuffed and he did not want to drive stun Brown in the neck because "that's not what policing is about. You're not here to torture someone and Tase them in the face." Id. Officer Rowan elected to use his Taser instead of using other physical force, such as a kick or punch, id. at 75:11-12, 76:5-14, because he was concerned that Brown was going to get hurt during the process of being pushed and pulled into the car or that the officers would get kicked or injured trying to force Brown into the car. Id. at 76:5-14.

5

Ex. C at 5. Brown eventually pled guilty to simple assault and resisting arrest. Brown Plea Colloquy at 10-12.

As a result of being drive stunned, Brown suffered burns on his thigh and scrotum and claims he developed a persistent incontinence problem. Brown Dep. at 54:22 - 57:15. Brown's expert witness, Dr. Steven J. Hirshberg, believes with a reasonable degree of medical certainty that Brown sustained a permanent alteration of his bladder and urinary function following the Tasering. Pls.' Resp. in Opp. to Juisti Mot. Ex. H at 5. Defendants' expert, Dr. Irvin H. Hirsch, disagrees and instead found that Brown's urinary symptoms were attributable to medication he takes and that the placement of the Taser could not have caused any injury to Brown's bladder function. Pls.' Resp. in Opp. to Juisti Mot. Ex. K at 3.

**IV.     Discussion**

A cause of action under Section 1983 requires only two allegations: some person has deprived a plaintiff of a federal right, and that person acted under color of state or territorial law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir. 2005). Brown alleges that Officer Rowan violated his Fourth Amendment rights by using excessive force and that Officer Juisti failed to prevent or interfere with Officer Rowan's use of excessive force. Brown also brings a supplemental state law claim for assault and battery against Officer Rowan. Erin Bean, Brown's wife, brings supplemental state law claims against both officers for loss of consortium.

**A.     Officer Rowan's Motion For Summary Judgment**

Excessive force claims in an arrest or investigatory stop context fall under the Fourth Amendment's protections against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 394

(1989). As such, we must analyze Brown's excessive force claims using the Fourth Amendment's objective reasonableness standard. See, e.g., Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007) (citing Graham, 490 U.S. at 388).

This standard balances the nature of the intrusion on a plaintiff's Fourth Amendment interests against the legitimate governmental interests. Graham, 490 U.S. at 396. The right to make an arrest or investigatory stop necessarily includes the right to use, or threaten to use, some degree of physical coercion. Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). Determining whether an officer used more force than was justified -- that is, excessive force -- requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, and (2) whether the suspect posed an immediate threat to the safety of the officers or others, or (3) was actively resisting arrest or was attempting to evade arrest by flight. Id. We also evaluate (4) whether the physical force applied was of such an extent as to lead to injury, (5) the possibility that the person subjected to the police action was violent or dangerous, (6) the duration of the action, (7) whether the action took place in the context of an arrest, (8) the possibility that the suspect was armed, and (9) the number of persons with whom the police officers were contending at that time. Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005). Such reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (quoting Graham, 490 U.S. at 396). We must look objectively at an officer's actions in light of the facts and circumstances of the situation, and do not consider the officer's subjective intent. Graham, 490 U.S. at 397. Because this Fourth Amendment inquiry is objective, subjective considerations such as an officer's malice or sadism are improper. Id. at 399. "Not every push or

shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 396 (internal citations and quotations omitted).

Officer Rowan argues that the undisputed facts demonstrate that he used objectively reasonable force to obtain Brown's compliance after Brown refused to get into the patrol car after being arrested, and that a two or three second drive stun was a de minimus use of force given that Brown had already resisted arrest. Rowan Mot. at 10. Officer Rowan further argues that since officers are permitted to use reasonable force during lawful arrests, he is entitled to summary judgment on Brown's state law claim for assault and battery. Id. at 14. He also claims he is entitled to qualified immunity. Id. at 14-15.

Plaintiffs oppose Officer Rowan's motion, arguing that (1) "the use of the Taser in electrocuting [Brown's] testicles was egregiously excessive, sadistic, petty, vindictive, and manifestly unreasonable," (2) "there is ample evidence to suggest" that the force used was excessive, and (3) Officer Rowan is not entitled to qualified immunity. Pls.' Resp. in Opp. to Rowan Mot. at unnumbered p. 4.

When an arrestee resists or fails to comply with an officer's orders, the officer may resort to reasonable force to obtain compliance, even if the arrestee is already handcuffed. In Gorman v. Warwick Township, an officer drive stunned an arrestee after she repeatedly refused to get into the rear of a police cruiser. 2012 WL 1439076, *5 (E.D. Pa. Apr. 26, 2012) (Joyner, J.) (unreported). In granting the police officers' motion for summary judgment on the plaintiff's Fourth Amendment claim, Judge Joyner noted that the plaintiff's uncooperative behavior and continued verbal and physical refusals to comply with the officers' commands made the use of the Taser reasonable, especially since the two drive stuns were brief and applied for the sole purpose of getting the arrestee in the police car. Id.

In Brown v. Cwynar, our Court of Appeals upheld the district court's grant of summary judgment in favor of an officer who used a Taser to induce an arrestee's compliance because the undisputed evidence showed that the force used was proportionate and reasonable. 484 F. App'x 676, 679 (3d Cir. 2012) (non-precedential). Evaluating the facts and circumstances surrounding the arrest, the Third Circuit agreed that the information supplied to the officer constituted a reasonable basis for him to conclude that the arrestee would continue to resist and act belligerently unless he was subdued. Id. at 680. Our Court of Appeals also found the officer was entitled to qualified immunity because no decision by the U.S. Supreme Court, this Circuit, or a majority of other Circuits had foreclosed the use of Tasers to subdue suspects aggressively or combatively resisting arrest. Id. at 681.

As noted in Rodriguez v. Panarello, the Third Circuit's non-precedential decisions have rejected excessive force claims arising from the use of a Taser when a suspect is in some way resisting arrest, 119 F. Supp. 3d 331, 341 (E.D. Pa. 2015) (citing Patrick v. Moorman, 536 F. App'x 255, 259 (3d Cir. 2013), and Brown v. Cwynar, 484 F. App'x 676, 680 (3d Cir. 2012)).

The undisputed facts in this case demonstrate that there is no sufficient basis on which a reasonable jury could find for Brown, and that the facts Brown disputes are not material ones. Brown does not dispute that he was arrested after several officers tackled him to the ground and handcuffed him and that he kicked Officer Juisti in the shin. Although Brown claims the kick was accidental, he pled guilty to simple assault. He also does not dispute that he had difficulty getting into the back of the patrol car, that he pled guilty to resisting arrest, and that -- after Officer Rowan drive stunned him -- the officers were able to get him into the back of the patrol car. Brown disputes Officer Rowan's account that he drive stunned him only one time.

Viewing Officer Rowan's actions from the perspective of a reasonable officer at the scene, Officer Rowan's use of his Taser to drive stun Brown, even if done so twice in quick succession, was not excessive. Kopec, 361 F.3d at 777. We consider (1) the severity of the crime at issue, (2) whether Brown posed an immediate threat to Officers Juisti and Rowan, (3) whether Brown was actively resisting arrest, (4) whether the drive stun led to injury, (5) whether there was a possibility that Brown was violent or dangerous, (6) how long Officer Rowan applied the drive stun, (7) whether Officer Rowan drive stunned Brown while arresting him, (8) whether there was a possibility that Brown was armed, and (9) whether there were others at the scene of Brown's arrest with whom the officers had to contend. Graham, 490 U.S. at 396; Estate of Smith, 430 F.3d at 150.

Three of these nine factors suggest that Officer Rowan's use of the Taser may not have been warranted. With respect to the eighth factor, there is no evidence that Brown was armed or that any officer believed he was. With respect to the ninth factor, while Officer Rowan spoke with Brown's two companions as Brown was being arrested, Officer Rowan did not appear to be contending with anyone other than Brown when he drive stunned him. As to the fourth factor, the drive stun did lead to injury, since Brown suffered burns on his thigh and genitals as a result of being Tased. Although the physician who conducted the independent medical examination believes otherwise, Brown's medical expert concluded with a reasonable degree of medical certainty that the drive stun caused Brown's current incontinence problems.

But the remaining six factors all demonstrate that Officer Rowan's use of the Taser was not excessive. First, Brown was charged with aggravated assault, resisting arrest, public drunkenness and disorderly conduct, and later pled guilty to simple assault and resisting arrest. These are neither minor nor trivial crimes. Second, Officer Rowan saw Brown kick Officer

Juisti. Though Brown argues that the kick was accidental, he pled guilty to simple assault thereby foreclosing the argument that the kick was not a criminal act. Third, Brown pled guilty to resisting arrest, precluding reopening the question of whether he actually did so, and a reasonable officer who knew or observed that it took four officers to handcuff and subdue a suspect and then saw that suspect not complying with instructions to get into a patrol car would have concluded that the suspect was continuing to resist arrest.

Fifth, a reasonable officer would have believed there was a possibility that Brown was violent or dangerous. Brown physically resisted Officer Juisti's attempt to handcuff him and four officers had to assist in subduing him. After being handcuffed, Brown then kicked Officer Juisti. A reasonable officer who knew or observed the circumstances of Brown's arrest, or even only observed Brown kick Officer Juisti, would have reasonably considered Brown to be violent or dangerous. Sixth, Officer Rowan's drive stun either lasted about three seconds or he drive stunned Brown twice in quick succession. While even one drive stun is undoubtedly painful, two drive stuns in quick succession would not be considered excessive under the circumstances. Seventh, a reasonable officer could have legitimately used "pain compliance" to induce a handcuffed suspect into obeying an order after that suspect refused to follow verbal commands. Officer Rowan drive stunned Brown to gain his compliance after Brown had already physically resisted arrest and appeared to be refusing Officer Juisti's orders to get into the car.

Even if, as Brown claims, Officer Rowan violated a departmental policy regarding the use of a Taser on or near the genitals, guidelines on Taser use "must be read in the context of the overarching policy embodied by the continuum on the use of force" and a violation of police policy does not in and of itself suffice to establish a constitutional violation. Rodriguez, 119 F. Supp. 3d at 340 (citing Smith v. Freland, 954 F.2d 343, 347-48 (6th Cir. 1992)). Further, our

Fourth Amendment inquiry is objective, so subjective considerations such as officer malice or sadism are out of bounds. Graham, 490 U.S. at 399. While Brown insinuates that Officer Rowan purposefully Tasered him in the testicles for malicious or sadistic purposes, that is immaterial as we only consider whether Officer Rowan's use of a Taser was reasonable under the circumstances. Brown, a large man, was seated on the edge of the back seat of the patrol car, with his feet outside the car, and Officer Rowan saw him kick Officer Juisti. Drive stunning Brown near the groin to subdue him and prevent him from kicking another officer was reasonable. Brown points to no evidence that Officer Rowan purposefully targeted his testicles.

The disputed facts boil down to whether Brown kicked Officer Juisti more than once, the degree of belligerence Brown manifested when Officers Juisti and Rowan were trying to get him into the car, and whether Officer Rowan used his Taser once or twice or targeted Brown's genitals. But these disputes are not material. Brown's conduct and plea establish that he resisted arrest and assaulted Officer Juisti. Brown was non-compliant with police commands even after being handcuffed. Officer Rowan's decision to drive stun him, once or twice in quick succession, to subdue him and gain his compliance was reasonable and not excessive under the circumstances. We will therefore grant Officer Rowan summary judgment on Brown's Section 1983 excessive force claim.

Brown also filed a state law claim alleging assault and battery against Officer Rowan. In Pennsylvania, a police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duties and, in making a lawful arrest, he may use such force as is necessary under the circumstances. Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). If the force used in making the arrest was reasonable, there is no assault or battery, but if the force used was excessive or unnecessary, the officer may be held liable. Id. As explained

above, the force used by Officer Rowan was reasonable and not excessive, and the arrest was lawful. We will therefore grant Officer Rowan summary judgment on Brown's state law claim as well.

We will not address Officer Rowan's qualified immunity arguments because there is no underlying constitutional violation.  As Erin Bean's loss of consortium claim is derivative of her husband's claims against Officer Rowan, we will grant summary judgment in Officer Rowan's favor on her claim as well.

B.      **Officer Juisti's Motion For Summary Judgment**

Since we found that Officer Rowan's use of force did not violate Brown's Fourth Amendment rights, Officer Juisti cannot be held liable under Section 1983 on a failure to intervene theory as there was no underlying unconstitutional conduct or use of excessive force for Officer Juisti to prevent.

A police officer has a duty to take reasonable steps to protect a victim from another officer's excessive force, and failure or refusal to intervene creates the possibility of liability under Section 1983. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).  But an officer is only liable if there was a realistic and reasonable opportunity to intervene. Id. at 651. If an officer is present when his colleague violates a citizen's constitutional rights, the officer can be liable under Section 1983 only if he had reason to believe that his colleague was committing a constitutional violation and he had a reasonable and realistic opportunity to intervene. Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 701 (E.D. Pa. 2011); Bryant v. City of Phila., 2012 WL 258399, *8 (E.D. Pa. Jan. 27, 2012) (Robreno, J.) (unreported). Other courts have held that such an opportunity exists only when that colleague uses excessive force in the officer's presence or otherwise within his knowledge, or if the officer saw his colleague use excessive force and had

13

time to intervene. Bryant, 2012 WL 258399, *8 (citing Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972) and Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981)).

Officer Juisti argues that Officer Rowan's use of his Taser was not excessive force because Brown was intoxicated, angry, combative, resisting arrest, and refusing to comply with police commands to get into the patrol car, and that Brown had already assaulted him by the time Officer Rowan used his Taser. Juisti Mot. at 12-13. Officer Juisti avers that there is no testimony or evidence showing that he asked Officer Rowan to use his Taser, that he knew in advance that Officer Rowan would use his Taser, or that he saw Officer Rowan use his Taser on Brown. Id. at 5. Officer Juisti also argues that Brown has not produced any evidence to establish that Officer Juisti had a reasonable opportunity to prevent Officer Rowan from using his Taser, "even had he thought such an intervention was necessary to protect Brown's constitutional rights." Id. at 13-14. Officer Juisti also claims that he is entitled to qualified immunity. Id. at 14-15.

Brown argues, in opposition, that "there is some factual determination outstanding…as to whether or not [Officer Juisti] actually saw the Taser being used" and that Juisti "may have been complicit in [Officer Rowan's] use of the Taser to force [Brown] further in the car, as they had a verbal/nonverbal agreement on how to collectively get him further inside." Pls.' Resp. in Opp. to Juisti Mot. at unnumbered p. 11. Brown also argues that the "differing factual averments as to whether or not [Brown] was simply trying to comply and scoot further into the car, or trying to assault the police officers" warrants a denial of summary judgment. Id.

Material facts are those that would affect the outcome of a case under the governing law. Anderson, 477 U.S. at 248. Whether Officer Juisti saw Officer Rowan use his Taser, agreed with Officer Rowan that he should use the Taser, or even directed Officer Rowan to use his Taser, is immaterial because the use of the Taser was not an instance of excessive force. Whether

14

Brown was trying to comply or trying to assault the police officers is also not material. Even if Brown had been trying to comply, a reasonable officer who observed Brown's prior conduct and saw Brown assault Officer Juisti would have concluded that Brown was continuing to be non-compliant and presented an ongoing safety risk. Officer Juisti makes the same arguments as Officer Rowan regarding Brown's conduct during his arrest, and the undisputed material facts of that encounter demonstrate that the force used was reasonable.

We will therefore grant Officer Juisti's motion for summary judgment on Brown's Section 1983 claim. We will not consider Officer Juisti's qualified immunity arguments because there was no underlying unlawful conduct. As Bean's loss of consortium claim is derivative of Brown's Section 1983 claim, we will also grant Officer Juisti's motion for summary judgment as to that claim.

## V.     Discovery And Other Outstanding Motions

Plaintiffs filed a motion on October 30, 2015 to compel discovery responses and afford further discovery. See Pls.' Mot. to Compel. Plaintiffs argue that Officer Juisti has not yet tendered his "personal file." Pls.' Resp. in Opp. to Juisti Mot. at 1 n.1. Plaintiffs also suggest that they have never received a readable copy of the Taser usage report. Id. at Ex. A. Officer Juisti responds that there was never a request for his "personal file" and that there are no outstanding discovery issues. Juisti Reply at 1-2. Plaintiffs protest that they still do not have Officer Juisti's file, which would include his training and certification information. Pls.' Resp. in Opp. to Juisti Mot. for Leave to File Reply at unnumbered p. 3.

With respect to Officer Juisti's file, plaintiffs have not explained how that file precludes summary judgment. Officer Juisti's training and certifications are not material to the issue of whether he is entitled to summary judgment on Brown's Section 1983 claim for excessive force

15

on a failure to intervene theory. The only questions for summary judgment are whether Officer Rowan used excessive force and whether Officer Juisti is liable under a failure to intervene theory. As we have found that Officer Rowan's use of force was not excessive, and therefore Officer Juisti cannot be liable under such a theory, his training and certification information is immaterial.

Plaintiffs also state that they have never received a legible Taser usage report and attach a copy of the illegible document. Pls.' Resp. in Opp. to Rowan Mot. for Leave to File Reply at unnumbered p. 3. But Exhibit F to Officer Rowan's motion for summary judgment includes that report, and it is clearly legible. See Rowan Mot. Ex. F at 3. That motion was filed on November 10, 2015 and plaintiffs have therefore had unfettered access to a legible copy of the report for several months, even if they claim Officer Rowan's attorney failed to provide a legible copy in some other fashion. Moreover, for purposes of the motions for summary judgment, we credited Brown's assertion that he was drive stunned not once, but twice.

The parties conducted substantial discovery in this case, and there are no outstanding discovery issues that preclude the Court's disposition of the motions for summary judgment. We will therefore deny plaintiffs' outstanding discovery motions and grant Officers Juisti and Rowan's motions for leave to file reply briefs over plaintiffs' objections.

### VI.    Conclusion

Brown's lawful arrest and subsequent guilty plea do not foreclose the possibility of a lawsuit for excessive force. But here, the undisputed material facts demonstrate that when Officer Rowan drive stunned Brown, Brown had already resisted arrest, assaulted an officer, and objectively appeared non-compliant with police commands. Officer Rowan's use of force was therefore not excessive. Officer Juisti cannot be found liable for failing to intervene when we

found the underlying conduct complained of did not constitute a Fourth Amendment violation. We will therefore grant both officers' motions for summary judgment. Because Erin Bean's state law loss of consortium claims are derivative of her husband's claims, we will grant the officers' motions as to those claims as well. An appropriate Order follows.

                                            BY THE COURT:

                                            _/s/ Stewart Dalzell, J._
                                            Stewart Dalzell, J.